## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MELISSA VIGIL,

       Plaintiff,

vs.                                               No. CIV 08-0980 JB/RLP

CITY OF ESPANOLA, RUSSELL
NARANJO, IN HIS OFFICIAL CAPACITY,
AND INDIVIDUALLY,

       Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment on Counts I and II and Memorandum in Support, filed December 1, 2008 (Doc. 10).  The Court did not hold a hearing on this motion because it believes that it has sufficient information from the briefing to make an informed ruling.  The primary issues are: (i) whether Plaintiff Melissa Vigil missed the statute of limitations for filing her Complaint under the New Mexico Human Rights Act ("NMHRA") when she filed more than ninety days after the Order of Nondetermination issued; and (ii) whether Vigil failed to exhaust her administrative remedies with regard to Defendant Russell Naranjo by not naming him as a respondent in her charge.  Because the statute of limitations had run on Vigil's NMHRA claims, and because there is no proper reason to find tolling or equitable relief from the statute of limitations in this case, the Court will grant the motion for summary judgment on statute of limitations grounds and not decide the exhaustion issue.

### <u>FACTUAL BACKGROUND</u>

Vigil was an employee for Defendant City of Espanola.  <u>See</u> Exhibit 4 to Response, Affidavit [of Melissa Vigil] ¶ 2, at 1 (executed May 16, 2007)("Vigil Aff.").  At some point during her time

as an employee with the City of Espanola, Vigil alleges that Naranjo sexually harassed her at various times, including inappropriately touching her on at least one occasion, and on another, telling her that he thought she wanted to get naked with him.  See id. ¶ 4, at 1; Exhibit A-1 to Motion, New Mexico Department of Labor, Human Rights Division Charge of Discrimination Form at 1 (dated September 5, 2007)("Charge of Discrimination").

On November 16, 2006, Vigil filed a sexual harassment complaint with the City of Espanola. See Vigil Aff. ¶ 2, at 1.  Vigil asserts that, out of retaliation for her sexual harassment complaint, the City of Espanola harassed her, intimidated her, attacked her integrity and work performance, and ultimately, notified her of its intent to terminate her employment for pretextual reasons.  See id. ¶¶ 6-10, at 1.  Facing the prospect of termination, Vigil chose to resign "under duress."  Id. ¶ 10.

On September 5, 2007, Vigil filed a complaint with the Human Rights Division of the New Mexico Department of Labor.  See Charge of Discrimination at 1.  She used a standard form labeled "EEOC Form 5" to set forth her complaint.  One of the boxes on the face of the form states: "Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  *(If more than two, list under PARTICULARS below.*)."  Charge of Discrimination at 1 (emphasis in original).  Directly below that text is a section allowing the complainant to list information for two respondents.  Vigil filled out only one of these spaces, listing the City of Espanola and giving the requested information relevant to that respondent – i.e., its address, number of employees, and its phone number.  See id.

Further down on the face of the form is a box with text stating: "THE PARTICULARS ARE (*If additional paper is needed attach extra sheet(s)*)."  Id. (emphasis in original).  This box provides blank space for the complainant to set forth his or her allegations.  In the blank space, Vigil stated:

I. Statement of Harm: I have been employed since September 2005[.] During my

employment I was subjected to sexual harassment by the Assistant Director including but not limited to wanting me to get naked with him." [sic].  He grabbed my breasts and squeezed them and attempted to place his hands down my pants[.] I reported the sexual harassment to upper management and said they would conduct an investigation[.]  Since reporting the sexual harassment management retaliated against me by intimidation, and attacked my job performance.  I was given notice to be terminated b[ut] I resigned.

II.  Respondent's reason for adverse action: Termination.

III.  Statement of Discrimination: I believe I have been discriminated against because of my sex (female/ [sic] Sexual harassment and retaliated against in violation of Title VII of The Civil Rights Act of 1964 and The New Mexico Human Rights Act.

Charge of Discrimination at 1.  In the affidavit attached to the Charge of Discrimination, Vigil

stated: "My complaint is against City of Espanola . . . ."  Affidavit of Melissa Vigil at 1 (executed

September 5, 2008)("September 5 Vigil Aff.").  The September 5 Affidavit contains no reference

to any other respondents.

As part of the administrative proceeding, the Human Rights Commission, pursuant to its

standard policy, required the City of Espanola to respond to a questionnaire and submit various

documents related to Vigil's claim.  See Exhibit 6 to Response, Questionnaire at 1 (not dated).  The

first item in the questionnaire refers to Naranjo: "Please have Russell Naranjo address the Charge

of Discrimination in detail."  Questionnaire ¶ 1, at 1.  The questionnaire also contains a request to

"[p]lease provide all corrective actions taken against Russell Naranjo regarding any and all sexual

harassment complaints lodged against him by Complainant and other females."  Id. ¶ 10, at 1.

Naranjo also submitted an affidavit answering to the allegations against him.  See Exhibit 6 to

Response, Affidavit of Russell Naranjo (executed January 28, 2008)("Naranjo Aff.").

The Order of Nondetermination, which administratively closed the complaint and constituted

a decision appealable to the appropriate district court, issued on May 22, 2008.  See Exhibit 1 to

Response, Order of Nondetermination at 1 (dated May 22, 2008).  The Order states: "According to

-3-

Section 28-1-13(A) of the New Mexico Human Rights Act, you have ninety (90) days from the date of service of this Order . . . to file notice of appeal in the [appropriate district court]."  Order of Nondetermination at 1.  The second-to-last paragraph appears in bold, all capital letters, and states:

"**IF YOU DO NOT FILE A NOTICE OF APPEAL WITH THE APPROPRIATE DISTRICT COURT WITHIN NINETY (90) DAYS OF YOUR RECEIPT OF THIS ORDER, AND IF YOU DO NOT PROPERLY SERVE THE NOTICE, YOUR RIGHT TO APPEAL THIS ORDER OF NONDETERMINATION TO THE DISTRICT COURT WILL EXPIRE.**" Id. at 2.

Counsel for the City of Espanola recieved a copy of the Order of Nondetermination on May 23, 2008, the day after it was mailed.  See Exhibit A to Motion, Declaration in Support of Defendants' Motion for Summary Judgment on Counts I and II ¶ 7, at 2 (executed by Felicia Lujan on December 1, 2008)("Lujan Decl.")("The Order of Nondetermination is dated May 22, 2008 and was received by counsel for the City of Espanola on May 23, 2008.").  While the City of Espanola received the Order of Nondetermination shortly after it issued, Vigil and her attorney, Yvonne K. Quintana, did not receive it by mail.  See Exhibit 2 to Response, Affidavit of Yvonne K. Quintana ¶¶ 1, 3, at 1 (executed December 29, 2008)("Quintana Aff.").  Vigil and her attorney did not learn that the Order of Nondetermination had issued until June 25, 2008, when Vigil's attorney called to inquire about it.  When Ms. Quintana learned that the Order of Nondetermination had issued, she personally picked a copy up at the Human Rights Commission's Office.  See Quintana Aff. ¶ 4, at 1.

## PROCEDURAL BACKGROUND

Vigil filed this lawsuit in the First Judicial District Court for the State of New Mexico.  See Exhibit A to Notice of Removal, Appeal from New Mexico Human Rights Division and Civil

Complaint for Discrimination, Retaliation, Constructive Discharge, Negligent Maintenance, Breach of Contract, and Two Counts of Assault and Battery at 1, filed in state court September 17, 2008, ("Complaint").   The Defendants removed the case to federal court on the basis of the federal constitutional claims that Vigil's Complaint encompasses.  See Notice of Removal ¶¶ 5-13, at 2-3, filed October 21, 2008 (Doc. 1).  The Defendants note that Vigil's Complaint includes a claim for procedural due process, which, the Defendants assert, is a matter of federal constitutional law.  See Notice of Removal ¶¶ 10-11, at 2.

The Defendants now move the Court to grant summary judgment in their favor on Counts I and II of the Complaint.  Count I is styled "Appeal from the New Mexico Human Rights Division," while Count II is for "Retaliation and Retaliatory Discharge/Hostile Work Environment." Complaint ¶¶ 47-81, at 6-12.  In support of their Motion, the Defendants contend that Vigil had ninety days after service of the Order of Nondetermination to file her lawsuit in district court.  See Defendants' Motion for Summary Judgment on Counts I and II and Memorandum in Support at 3, filed December 1, 2008 (Doc. 10)("Motion").  The Defendants insist that "service" occurred when the Human Rights Division mailed out the Order of Nondetermination on May 22, 2008.  Motion at 3.  According to the Defendants' calculation, the ninety-day period expired on August 20, 2008, but Vigil did not file her lawsuit in district court until September 17, 2008 – 118 days after mailing of the Order of Nondetermination.  See Motion at 3.  The Defendants also argue that Vigil failed to exhaust her administrative remedies against Naranjo because she did not name him as a respondent in the administrative grievance proceeding.  See id.  The Defendants contend that all NMHRA claims have to be exhausted in the administrative process, and that the Court should dismiss the NMHRA claims against Naranjo because he was not a respondent in the administrative proceedings. See Motion at 4.

Vigil responds that she timely filed her Complaint in the District Court.  See Plaintiff's Answer to Motion for Summary Judgment on Counts I and II and Memorandum in Support at 2, filed December 29, 2008 (Doc. 16)("Response").  Vigil maintains that she was served on June 26, 2008 – the day that her attorney picked up the Order of Nondetermination from the Human Rights Commission Office in Santa Fe, New Mexico.  See Response at 2.  Vigil points out that the Order states on its face: "'If you do not file a notice of appeal with the appropriate District Court within ninety (90) days of your receipt of this Order . . . your right to appeal this Order [of] Non-determination to the District Court will expire.'"  Response at 2 (quoting Order of Nondetermination)(bold typeface and capitalization removed in Response).

Vigil also argues that the "Assistant Director" discussed in the "Particulars" box on the Charge of Discrimination form is Naranjo.  Response at 3-4.  Vigil notes that the Charge of Discrimination form allows a complainant to name additional respondents in the "Particulars" box. Vigil also argues that the Defendants made Naranjo respond directly to the administrative complaint, as reflected in his Affidavit.  See Response at 3.  Finally, Vigil argues that she mentioned Naranjo by name in the Affidavit which she attached to her Charge of Discrimination.  See Response at 4.

In reply, the Defendants attack the form of Vigil's Response, arguing that certain facts should be deemed admitted because she failed to follow the particulars of local rule 56.1.  See Reply Brief in Support of Defendants' Motion for Summary Judgment on Counts I and II, filed January 9, 2009 (Doc. 18)("Reply").  The Defendants argue that paragraphs one and three of Vigil's Statement of Disputed Issues of Material Fact deserve "especially close scrutiny."  Reply at 2.  The Defendants criticize paragraph one because paragraph one is conclusory and is not supported by a citation to the record.  See Reply at 2.

The Defendants insist that paragraph three is deficient because  it does not cite to the record,

and because the two attached affidavits that might support it do not provide evidence of the specific contention in paragraph three.  See Reply at 3.  Specifically, paragraph three states: "'Plaintiff, and her attorney did not receive the Order of Non-determination by mail.'"   Reply at 3 (quoting Response ¶ 3, at 1).  The Defendants note that the affidavit of Vigil's counsel states that "her 'office' did not receive the order of non-determination by mail," and that "'Plaintiff, through her undersigned counsel, did not learn of the Order of Non-determination had been issued until June 25, 2008.'" Reply at 3 (quoting Quintana Aff. ¶¶ 1 & 3, at 1)(emphasis in Reply).  The Defendants argue that, read together, these statements from Quintana's affidavit do not contain or support a contention that both Vigil and her counsel somehow managed not to receive either of the letters mailed to them at different addresses.  See Reply at 3.

The Defendants also argue that the other relevant affidavit – that of Pamela Lujan y Vigil of the Human Rights Commission, does not contain testimony that the Human Rights Commission failed to mail copies of the Order of Nondetermination to Vigil or her counsel, or that mailed copies were returned undelivered.  See Reply at 3.  According to the Defendants, Lujan y Vigil's affidavit states only that Vigil's counsel contacted Lujan y Vigil on June 25, 2008 to announce that she allegedly did not receive the Order of Nondetermination.  See Reply at 3.  In light of the evidence, the Defendants urge that the Court "should not indulge the highly unlikely and suspicious contention that of three addresses the only one to receive by mail the order that the Plaintiff's counsel specifically requested was the City of Espanola."  Reply at 4 (footnote omitted).

Regarding the merits, the Defendants argue that "service" under § 28-1-13A is complete upon mailing.  Reply at 5.  The basis for the Defendants' contention is that rule 1-076 of the New Mexico Rules of Civil Procedure governs appeals from the Human Rights Commission.  See Reply at 5.  Rule 1-076 "tracks the statutory language ('within ninety (90) days from the date of service

on the parties to the administrative proceeding')." Reply at 5 (quoting NMRA 1076(D)).  According to the Defendants, service is defined in the New Mexico Rules of Civil Procedure – the same rules that govern the appeals process.  See Reply at 5.  Under rule 1-005 of the New Mexico Rules of Civil Procedure, service may be made by mailing, and "'[s]ervice by mail is complete upon mailing.'" Reply at 5 (quoting NMRA 1-005(B))(brackets in Reply).  The Defendants argue that rule 1-076 "expressly contemplates service by mail."  Reply at 5.

The Defendants contend that public policy favors using "service" over "receipt" as the beginning of the clock because, otherwise, parties would be able to avoid their obligations by "mere denial of the receipt of a document." Id. (citing Indiana ex. rel. Lake County Dep't of Pub. Welfare v. Lake Superior Court, 159 N.E.2d 849, 50 (Ind. 1959)).  The Defendants also point out that the ninety-day period provides ample protection, and that, in this case, Vigil's counsel at least had the Order of Nondetermination by June 26, 2008 and had nearly two months to file the appeal before the statute of limitations ran.  See Reply at 6.

In reply to Vigil's arguments that Naranjo was a respondent, the Defendants argue that the only named respondent was the City of Espanola and that Vigil testified in her affidavit that her complaint was against the City of Espanola.  See Reply at 6 (citing September 5 Vigil Aff. at 1).  Moreover, when Vigil's counsel entered an appearance, she identified only the City of Espanola in the caption and did not include Naranjo.  See Reply at 7 (citing Exhibit E to Reply, Entry of Appearance at 1, dated June 14, 2007).  The Defendants contend that exhaustion of administrative remedies is more that merely providing notice that an individual engaged in discriminatory acts.  Rather, the NMHRA provides special procedures and protections that apply only to charging parties and respondents.  The Defendants maintain that the law allows charging parties and respondents to mediate or conciliate disputes, and it ensures that individual respondents receive, among other

things, notice of the withdrawal or closure of a complaint.  See Reply at 7-8 (citing NMAC 9.1.1.9(C) and 9.1.1.8(I)(4)).  In short, the Defendants argue that Naranjo was not treated like a respondent in the administrative proceeding even though he submitted an affidavit and might have been mentioned, albeit by an incorrect title, in the Particulars of the Charge of Discrimination.  See Reply at 8.  The Defendants contend that, ultimately, Naranjo did not receive the administrative due process to which he would have been entitled had been named as a respondent.  See id.

## LAW REGARDING MOTIONS FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991))(internal quotation marks omitted). See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the movant meets its burden, rule 56(e) requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.")(internal quotation marks omitted).  The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  Rule 56 provides that

"an opposing party may not rely merely on allegations or denials in its own pleadings; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his [or her] pleadings."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.  See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990)("[The p]laintiff merely has alleged two isolated statements, one by [one defendant] and one by [another defendant].  "The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation."  Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005 at * 1 (D. Kan.)(citing Fed. R. Civ. P. 56(e) and  Argo v. Blue Cross and Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006)).   "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'"  Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005 at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

## RELEVANT LAW REGARDING THE NMHRA

The NMHRA, which is administered by the Human Rights Division and the Human Rights Commission, prohibits covered employers from discriminating against "any person otherwise qualified because of race, age, religion, color, national origin, ancestry, sex, physical or mental handicap or serious medical condition, or, if the employer has fifty or more employees, spousal affiliation."  NMSA 1978 § 28-1-7.  The NMHRA provides an administrative process through which individuals asserting discrimination may file a complaint with the Human Rights Division.  See NMSA 1976 § 28-1-10.  The Human Rights Commission conducts the administrative hearings.  See

NMAC 9.1.1.1-9.1.1.18 (outlining "rules and regulations govern[ing] procedure for filing complaints with the human rights division, for investigating complaints filed with the human rights division and for conducting administrative hearings of complaints brought before the human rights commission").   When a complaint is filed, "[t]he director shall advise the respondent that a complaint has been filed against the respondent and shall furnish the respondent with a copy of the complaint."   NMSA 1976 § 28-1-10B.

The NMHRA also allows individuals to bring a lawsuit in the appropriate district court, but only after exhausting their administrative remedies.   See Luboyeski v. Hill, 117 N.M. 380, 382, 872 P.2d 353, 355 (1994).  The NMHRA provides:

> A person aggrieved by an order of the commission may obtain a trial de novo in the district court of the county where the discriminatory practice occurred or where the respondent does business by filing a notice of appeal within ninety days from the date of service of the commission's order.

NMSA 1978 § 28-1-13A.  Thus, the administrative grievance process constitutes a prerequisite to bringing suit in a district court under the NMHRA.  See Luboyeski v. Hill, 117 N.M. at 382,  872 P.2d at 355  ("'Compliance with the grievance procedure of the [NMHRA] is a prerequisite to suit under this Act.'")(quoting  Phifer v. Herbert, 115 N.M. 135, 138, 848 P.2d 5, 8 (Ct.App. 1993)).

**1.    The Statute of Limitations for Filing an Appeal in District Court under the NMHRA.**

Section 28-1-13A states that "a person aggrieved by an order of the commission" must file a notice of appeal "within ninety days from the date of service of the commission's order."  NMSA 1978 § 28-1-13A.  It is evident from the language of the statute that the ninety-day limitations period is triggered upon "service" of the commission's order. Id.  Although "service" represents the point in time at which the statute of limitations begins to run, the statute does not define when service occurs.  The Supreme Court of New Mexico has mentioned, but declined to decide, at what point

-11-

service occurs under  § 28-1-13A.  <u>See</u> <u>Ocana v. American Furniture Co.</u>, 135 N.M. 539, 548, 91 P.3d 58, 67 (2004)("[W]e do not discuss whether the [statute-of-limitations] period begins to run on the date the complainant actually receives notice of the no-probable-cause decision from the Division.").

In <u>Ocana v. American Furniture Co.</u>, an employee of American Furniture Company filed a sexual-discrimination complaint against her employer with the Human Rights Division.  <u>See</u> 135 N.M. at 544, 91 P.3d at 63.  The Human Rights Division forwarded a copy of the complaint to the Equal Employment Opportunity Commission ("EEOC") to enable that agency to investigate the federal discrimination claims.  <u>See</u> <u>id.</u>, 91 P.3d at 63.  While the Human Rights Division and the EEOC were investigating the claims, the plaintiff hired an attorney, who entered an appearance with the Human Rights Division but not with the EEOC.  <u>See</u> <u>id.</u>, 91 P.3d at 63.  The Human Rights Division had a practice of putting attorneys on the mailing distribution list once the attorney files an appearance.  <u>See</u> <u>id.</u>, 91 P.3d at 63.  When the Human Rights Division would add counsel to the mailing list, the EEOC would normally  learn of counsel's appearance from that process.  <u>See</u> <u>id.</u>, 91 P.3d at 63.

When the Human Rights Division mailed out its letter dismissing the plaintiff's claims in <u>Ocana v. American Furniture Co.</u>, neither the plaintiff nor her counsel initially received a copy.  <u>See</u> <u>id.</u>, at 91 P.3d at 63.  The plaintiff's copy was mailed to an address from which she had recently moved, and her attorney had been omitted from the mailing distribution list.  <u>See</u> <u>id.</u>, 91 P.3d at 63. Because the plaintiff and her attorney did not receive the letter, they did no know the status of the plaintiff's claim until well after the time period for filing an appeal with the district court had passed.  <u>See</u> <u>id.</u>, 91 P.3d at 63.  When the plaintiff filed suit in the state district court, the court granted summary judgment on the basis of her missing the statute of limitations.  <u>See</u> <u>id.</u> at 545, 91

P.3d at 64.  On appeal, the plaintiff argued that the statute of limitations should have been tolled.
See id. at 545, 91 P.3d at 64.

In its discussion of tolling, the Supreme Court of New Mexico in Ocana v. American
Furniture Co. reversed summary judgment, finding that there was a genuine issue of material fact
regarding whether the statute of limitations should be tolled.  See id. at 545, 91 P.3d at 64.  The
Supreme Court of New Mexico noted that, where the Human Rights Division had admitted to
erroneously omitting the plaintiff's counsel from its mailing list, "a fact-finder could find that the
Division's actions tolled the time limits."  See id. at 548, 91 P.3d at 67.  Because it found that there
was a genuine issue of material fact regarding whether the Human Rights Division's error had tolled
the statute of limitations, the Supreme Court of New Mexico declined to decide whether the statute
of limitations began running only upon actual receipt.  See id. at 548, 91 P.3d at 67.

## 2.   Proper Parties to Appellate Review of NMHRA Administrative Proceedings.

To bring an NMHRA suit in district court, a plaintiff is required to exhaust the administrative
grievance process with respect to all defendants named in the district court lawsuit.  See Luboyeski
v. Hill, 117 N.M. at 383, 872 P.2d at 356 ("Since [the plaintiff] has not gone through the
administrative process that is prerequisite to suing the individual defendants under the Human
Rights Act, we affirm the trial court's order dismissing those defendants.").  Accordingly, in
Luboyeski v. Hill, the Supreme Court of New Mexico affirmed a trial court's dismissal of
respondents who were not named in the administrative proceeding, but who were added to the
appeal to the district court.  See 117 N.M. at 383, 872 P.2d at 356.

## ANALYSIS

It is undisputed that Vigil filed her lawsuit in district court more than ninety days after the
Human Rights Division mailed out its Nondetermination Order, pursuant to which she had the right

to bring suit in the district court.  The Court believes the Supreme Court of New Mexico would find

that service of the Order of Nondetermination is effected upon mailing and not upon receipt.  Given

that service occurs upon mailing, and that the circumstances of this do not give rise to tolling, the

Court finds that the statute of limitations ran on Vigil's NMHRA claims before she filed in district

court.

I.      **VIGIL HAS SUBSTANTIALLY COMPLIED WITH LOCAL RULE 56.1.**

Local rule 56.1 provides:

> A memorandum in opposition to the motion [for summary judgment] must contain
> a concise statement of the material facts as to which the party contends a genuine
> issue does exist.  Each fact in dispute must be numbered, must refer with
> particularity to those portions of the record upon which the opposing party relies, and
> must state the number of the movant's fact that is disputed.  All material facts set
> forth in the statement of the movant will be deemed admitted unless specifically
> controverted.

D.N.M.LR-Civ. 56.1(b).  According to the rule, and according to this Court's interpretation of that

rule, it is appropriate to deem a movant's facts admitted when the nonmoving party fails to dispute

those facts.  See Sisneros v. City of Albuquerque, No. CIV-02-1035 JB/KBM, Memorandum

Opinion and Order at 2 (D.N.M. 2003)("[The plaintiff's] failure to dispute any of the Defendants'

facts means that the Court must deem those facts admitted for purposes of deciding this summary

judgment motion."); D.N.M.LR-Civ. 56.1(b).  In this case, while Vigil has drafted her Response

with less attention to form and detail than what rule 56.1(b) requires, she disputed the Defendants'

facts with sufficient specificity to avoid the Defendants' facts being deemed admitted.

The Defendants' Statement of Undisputed Facts contains four numbered paragraphs.  The

important facts that Vigil disputes appear in paragraphs two and three of the Defendants' Statement

of Undisputed Facts.  Those facts are: (i) "Plaintiff did not name Russell Naranjo in her charge of

discrimination;" and (ii) "On May 22, 2008, the State of New Mexico Department of Workforce

-14-

Solutions issued an [order] dismissing the Plaintiff's charge under the New Mexico Human Rights Act and informing Plaintiff and her lawyer of [the requirement] to file a notice of appeal in the district court within ninety days of the 'date of service of the commission's order.'" Motion ¶¶ 2-3, at 2 (citing NMSA § 28-1-13A).  In response, Vigil writes in her Statement of Disputed Issues of Material Fact that:

> 2.    The Commission's Order of Non-determination reflects mailing on May 22, 2008.
>
> 3.    Plaintiff and her attorney did not receive the Order of Non-determination by mail.
>
> 4.    The Order of Non-determination was received by the Plaintiff on June 26, 2008, as reflected by the attached receipt (Exhibit 1).
>
> 5.    Plaintiff through her attorney picked up a copy of the Order of Non-determination in person by hand delivery on June 26, 2008.  (See Attorney's Affidavit attached hereto as Exhibit 2 and Affidavit of Pamela Lujan y Vigil attached as Exhibit 3).
>
> 6.    The Assistant Director identified by Plaintiff in her original complaint and charge of discrimination is Russell Naranjo . . . .  (See Plaintiff's Affidavit attached hereto as Exhibit 4).
>
> 7.    Plaintiff filed her Affidavit dated June 5, 2007 with the New Mexico Human Rights Commission as part and parcel of her original charge of discrimination, which identifies Russell Naranjo as the "Assistant Director" who subjected her to sexual harassment and abuse.
>
> 8.    The Defendant Russell Naranjo submitted an Affidavit to the New Mexico Human Rights Commission as part of the response to Plaintiff's charge[] of discrimination, admitting to sexual comments.

Response at 2.  These paragraphs do not fully conform with rule 56.1 because, among other things, they do not refer by number to the Defendants' Statement of Undisputed Facts and they do not contain record citations in all pertinent cases.  At the same time, the defects are not of such a character that the Court should deem the Defendants' facts admitted.  Vigil's paragraphs two

-15-

through eight are dedicated to refuting Defendants' paragraphs 2 and 3.  There are citations to evidence, and it is reasonably clear which facts Vigil is trying to show raise a genuine issue of material fact.  It is therefore inappropriate to deem the Defendants' facts admitted because of the technical rule 56.1 defects.

To hold that the City of Espanola's factual allegations are undisputed merely because Vigil's Response failed in some technical particulars would elevate form over substance.  The purpose of local rule 56.1 is to assure that the non-moving party on summary judgment responds to the movant's individual factual allegations with affidavits or other evidence, as required under rule 56 of the Federal Rules of Civil Procedure.  Through that procedure, the Court can ascertain whether there are disputed issues of material fact.  Vigil's Response, while less than meticulous, disputes the important factual allegations that the Defendants raise in their Motion.  There are sufficient citations and references to attached affidavits to support Vigil's major contentions.  Rule 56.1 does not require the Court to deem facts admitted for failure to number or for failure to include meticulous record citations so long as the non-moving party specifically disputes the movant's facts and cites to evidence in support of the disputed facts.  Accordingly, the Court declines to deem the Defendants' facts admitted.  Further, pursuant to the standard for deciding summary judgment motions, the Court will view the facts in the light most favorable to Vigil, who is the non-moving party.

## II.     SERVICE UNDER NMSA § 28-1-13A OCCURS AT THE TIME OF MAILING.

Taking Vigil's allegations as true and making reasonable inferences in her favor, the Court finds that Vigil has not presented evidence of a genuine issue of material fact regarding whether she filed within the statute of limitations.  While the Supreme Court of New Mexico has not made a pronouncement on whether service is complete upon mailing or upon receipt under § 28-1-13A,

there are good reasons to believe that it would find that service is complete upon mailing and that the statute of limitations can be tolled under limited circumstances.

First, the New Mexico Rules of Civil Procedure, which set forth the general understanding of the meaning and manner of "service" in New Mexico, state: "Except as otherwise provided in these rules, every order required by its terms to be served . . . shall be served upon each of the parties." N.M. R. Civ. P. 1-005(A). The rules further require:

> Whenever under these rules service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney unless service upon the party is ordered by the court. Service upon the attorney or upon a party shall be made by delivering a copy to the attorney or party, or by mailing a copy to the attorney or party at the attorney's or party's last known address, or, if no address is known, by leaving it with the clerk of the court.

N.M. R. Civ. P. 1-005B. "Service by mail is complete upon mailing." Id. In short, the general understanding of legal service in New Mexico is that delivery and mailing are proper, and that service by mail is complete upon mailing.

The Court believes that the term "service," as rule 1-005 defines it, applies to appeals from the Human Rights Commission. Rule 1-076, which governs *de novo* appeals from the Human Rights Commission, contains a statute-of-limitations section which substantially tracks the language of § 28-1-13A. Section 28-1-13A states: "A person aggrieved by an order of the commission may obtain a trial de novo in the district court of the county where the discriminatory practice occurred or where the respondent does business by filing a notice of appeal within ninety days from the date of service of the commission's order." Id. Rule 1-076 states: "An appeal from the Human Rights Commission shall be taken within ninety (90) days from the date of service on the parties to the administrative proceeding of: (1) the commission's order . . . ." N.M. R. Civ. P. 1-076D. The similarity in language and subject matter between § 28-1-13A and rule 1-076D suggest that the two

should be interpreted similarly.

The Court believes that rule 1-076 uses "service" as that term is defined elsewhere in the New Mexico Rules of Civil Procedure.  Indeed, there is nothing in rule 1-076 that would command a different definition of "service" within its context.  Accordingly, "service . . . of the commission's order" under rule 1-076 falls under rule 1-005, which allows mail service of "every order required by its terms to be served."  N.M. R. Civ. P. 1-005.  Given that rule 1-005 governs rule 1-076, it follows that rule 1-005's recognition that service by mail is complete upon mailing applies in the context of rule 1-076, the rule governing appeals from the Human Rights Commission.

The operation of legal deadlines in analogous contexts, such as appeals from administrative agencies, further strengthen the proposition that "service" of the commission's order is measured from the date of mailing.  In the context of appeals from administrative agencies, the clock begins running on the operative deadlines when the agency takes action.  The deadlines are not dependent on when the involved parties find out that action has been taken.  For example, under rule 1-074, which governs appeals from administrative agencies, an appeal from an agency "shall be filed in the district court within thirty (30) days after the date of the final decision or order of the agency."  N.M. R. Civ. P. 1-074.

The Court recognizes that appeals from the New Mexico Human Rights Commission are not subject to rule 1-074.  Rather, as discussed above, rule 1-076 controls such appeals.  One of the key differences between rule 1-074 and 1-076 is that the latter has a more generous time requirement.  The other is that the clock runs at "service" rather than the date of the "final decision or order."  Nevertheless, there is a valid analogy to the extent that both rules contain statutes of limitations which begin running when the agency takes some action, either making a final decision or order, or serving that order on the parties.  In neither case does the beginning of the limitations

period depend on receipt or any other action by the parties.

Similarly, rule 1-073 allows for appeals from the metropolitan court by filing a notice of appeal within fifteen days "after the judgment or final order appealed from is filed in the metropolitan court clerk's office." N.M. R. Civ. P. 1-073. Appeals from the magistrate court have the same requirement that the notice of appeal be filed within fifteen days "after the judgment or final order appealed from is filed in the magistrate court clerk's office." N.M. R. Civ. P. 1-072. While the rules for appealing magistrate, metropolitan court, administrative, and Human Rights Commission orders reflect distinctions in the court or agency activity that triggers the deadline – i.e., filing, service, or the date of the final decision or order – the deadline always depends on the action of the agency or court.

In light of the operation of rule 1-076 and the fact that it both applies to appeals from Human Rights Commission and tracks the language of 28-1-13A, the Court finds that "service" in the context of this case applies in the sense conveyed in rule 1-005. Consequently, service by mailing is appropriate, and service by mail is complete on the date of mailing. Given that mailing in this case occurred on May 22, 2008, Vigil missed the deadline to file her appeal by nearly a month. Vigil had until August 20, 2008, to file her appeal to the district court, but she waited until September 17, 2008, which came 118 days after mailing of the Order of Nondetermination and twenty-eight days after the statute of limitations had run. Thus, unless Vigil can show a compelling reason for tolling or other equitable relief, her appeal is time-barred, and the Court should dismiss her NMHRA claims.

There is good reason to find that, generally, proper service is determined with reference to the actions of the party wishing to carry out service rather than to the actions of the receiving party. A party invoking the jurisdiction of a court over another party bears the burden of notifying that

-19-

party, through service of process, of legal action.  See, e.g., Truss v. Chappell, 2008 WL 3877741,

*2 (Ala.)("One of the requisites of personal jurisdiction over a defendant is perfected service of

process giving notice to the defendant of the suit being brought . . . .  When the service of process

on the defendant is contested as being improper or invalid, the burden of proof is on the plaintiff to

prove that service of process was performed correctly and legally.")(internal quotation marks and

citations omitted); Blakeney v. Warren County, 973 So.2d 1037, 1039-40 (Miss. App. 2008);

Roberts v. Anka, 45 A.D.3d 752, 753 (N.Y.A.D. 2007)("The plaintiff bears the ultimate burden of

proving by a preponderance of the evidence that jurisdiction over the defendant was obtained by

proper service of process.")(internal quotation marks and citations omitted); Re-Employment

Services, Ltd. v. National Loan Acquisitions Co., 969 So.2d 467, 471 (Fla. App. 2007)("The burden

of proving proper service of process falls upon the party invoking the court's jurisdiction.").

Although the party invoking a court's jurisdiction bears the burden of establishing service, courts

generally find that a presumption of valid service arises upon a showing that the statutes or rules

prescribing the manner of service have been followed.  See, e.g., Cavalry Portfolio Services, LLC

v. Reisman, 865 N.Y.S.2d 286, 287 (N.Y.A.D. 2008); Lawrence v. Sullivan, 666 S.E.2d 175, 182

(N.C. App. 2008)("A showing on the face of the record of compliance with the statute providing for

service of process raises a rebuttable presumption of valid service.");  Bage, LLC v. Southeastern

Roofing Co. of Spartanburg, Inc., 646 S.E.2d 153, 159 (S.C. App. 2007)("When the civil rules on

service are followed, there is a presumption of proper service.")(internal quotation marks and

citations omitted).

        The presumption of valid service for following prescribed methods of service prevents the

injustice of allowing parties to thwart a court's proper jurisdiction by making unsubstantiated

allegations that they did not receive notice of an action.  It would be unfair to place the burden of

proving proper service on a party, but leave the other party unlimited ability to deny receipt of service.  The onus for proving service is on the party invoking jurisdiction, but the law provides an effective way for that party to prove jurisdiction.  Here, Vigil has not rebutted the presumption that the Human Rights Division made proper service on May 22, 2008.

III.    **THERE ARE NO CIRCUMSTANCES IN THIS CASE THAT COMPEL A FINDING THAT THE NINETY-DAY PERIOD WAS TOLLED.**

Under some circumstances, the New Mexico courts have found that statutes of limitations on appeals from agency decisions might be tolled.  In one case, which dealt with an appeal from the Human Rights Division, the Supreme Court of New Mexico applied tolling based on the possibility that the Human Rights Division admitted to erroneously omitting the plaintiff's counsel from the mailing list through which the plaintiff's counsel would have received a copy of the relevant order.  See Ocana v. American Furniture Company, 135 N.M. at 548, 91 P.3d at 67.  The Supreme Court of New Mexico did not find that the error tolled the statute of limitations.  Rather, it observed that "a fact-finder could find that the Division's actions tolled the time limits."  Id., 91 P.3d at 64.  The Court interprets Ocana v. American Furniture Company as standing for the proposition that an error on the part of the division which causes a party not to receive notice of the commission's order might toll the statute of limitations.

Such an erroneous activity by the Human Rights Commission or the Human Rights Division is not present here.  The Defendants have offered evidence that the Human Rights Division mailed the Order of Nondetermination on May 22, 2008, and that copies were sent to Vigil and to her attorney, Ms. Quintana.  While Vigil and her attorney have submitted an affidavit establishing Ms. Quintana and Vigil did not receive the Order by mail, they submit no evidence to contradict the Defendants' evidence that both Ms. Quintana and Vigil were copied on the Order of

Nondetermination.  In other words, Vigil supplies no evidence that the Human Rights Division made a mistake and failed to mail notice to either her or her attorney.  Ocana v. American Furniture Company therefore does not apply.

Vigil admits that, by June 26, 2008, she had the Order of Nondetermination in hand.  In other words, even if the Human Rights Division committed an error, she still received Order of Nondetermination with nearly two months to file the appeal.   Furthermore, the Order of Nondetermination bore a visible date of May 22, 2008 and repeated the statutory requirement that notice of appeal must be filed within ninety days of service of the order.  Vigil or her attorney therefore cannot say that the Human Rights Division allowed the filing deadline to slip by unnoticed without notifying Vigil of the existence of the Order of Nondetermination.

There is some merit to Vigil's argument that the Order of Nondetermination bears contradictory information about when the statute of limitations began running.  While one part of the letter recites the statutory requirement of 28-1-13A that Vigil had ninety days from the time of service, another part of the letter, in bold type face, warns that notice of appeal must be filed within ninety days of receipt of the order.  The Court does not, however, credit the argument.  First, the statutory language, which the letter cites, is binding law, not the warning at the end of the Order of Nondetermination.  At most, the warning at the end might reasonably viewed as an interpretation of the statutory language regarding "service."  Even so, the Court believes that Vigil and her attorney should have been alerted to the possibility that "service" and "receipt" are not the same, and that reliance on the letter's language, without further investigation, rather than that of the statute, would be unwise.

Second, this is not the appropriate set of facts to credit an estoppel argument.  Normally, estoppel arguments against government entities rarely succeed.  See Kilmer v. Goodwin, 136 N.M.

440, 447, 99 P.3d 690, 697 (Ct.App. 2004).  To succeed on an estoppel argument against a New

Mexico government entity, a party must show

> (1) the government knew the facts; (2) the government intended its conduct to be acted upon or so acted that plaintiffs had the right to believe it was so intended; (3) plaintiffs must have been ignorant of the true facts; and (4) plaintiffs reasonably relied on the government's conduct to their injury.

Id.  "In addition to these four factors, the plaintiff must demonstrate 'affirmative misconduct on the

part of the government.'" Id. (quoting Gallegos [v. Pueblo of Tesuque], 2002-NMSC-012, ¶ 24 n.

5, 132 N.M. 207, 46 P.3d 668).

The Court does not believe that Vigil meets the criteria for equitable estoppel, even if she

were attempting to estop the Human Rights Division from taking some action against her after she

relied on a representation from the Human Rights Division.  In this case, however, any estoppel

argument is even more tenuous, because Vigil asks the Court to excuse her missing the deadline to

sue one entity – the City of Espanola – because she relied on the representations of another entity

– the Human Rights Division.  The argument appears to be equitable estoppel of one party against

a third party, and its application is dubious.

There is also no sound reason for the Court, in these circumstances, to create some novel

equitable basis for exempting Vigil from the operation of New Mexico's statute of limitations.  Vigil

had the Order of Nondetermination on June 26, 2008.  She had nearly two months before the statute

of limitations expired after she received the Order of Nondetermination.  This is not a situation

where she mistakenly added three days for the mail rule and, as a consequence, barely missed the

limitations period.  She knew that she received the Order of Nondetermination late and made no

attempt to adjust her conduct accordingly.  Equity should not come to her assistance under such

circumstances.

Having examined New Mexico law regarding appeals to the district court pursuant to § 28-1-13A, the Court finds that Vigil missed the statute of limitations, which began running at the date of service, which, in this case, was the date of mailing.  There are no facts suggesting that it would be appropriate to find that the statute of limitations was equitably tolled or that the Court should apply equitable estoppel.  Given the passage of the statute of limitations and the lack of any applicable mitigating equitable doctrine, the Court finds that Vigil's NMHRA claims are time barred.  The Court will dismiss the NMHRA claims with prejudice.

## IV.    THE COURT NEED NOT DECIDE WHETHER VIGIL FAILED TO EXHAUST THE ADMINISTRATIVE GRIEVANCE PROCEDURE WITH REGARD TO NARANJO.

The aggregate of evidence leads the Court to believe that Naranjo may not have been a respondent in the administrative proceeding.  Notably, Vigil never indicated that Naranjo was a respondent, and she swore an affidavit in which she testified that her complaint was against the City of Espanola, with no mention of Naranjo.  It does not appear that, as a matter of procedure, Naranjo was treated like a respondent, with the attendant administrative due process and protections that a respondent would receive.  Nonetheless, the Court need not decide that question at this time, given that Vigil's NMHRA claims are time-barred, regardless whether Naranjo was properly named as a respondent.

The Court concludes that the statute of limitations began running at the time of service.  The time of service was the time of mailing – May 22, 2008.  Because the clock began running on the date of mailing of the Order of Nondetermination, Vigil had until August 20, 2008 to file her notice of appeal.  She missed that date and waited nearly another month, even though she had the Order of Nondetermination in her hand at least by June 26, 2008.  In light of the passage of the statute of limitations and a lack of reasons to find tolling or other equitable relief, Vigil' NMHRA claims are

time-barred.

      **IT IS ORDERED** that the Defendants' Motion for Summary Judgment on Counts I and II

and Memorandum in Support is granted.  The NMHRA claims are dismissed as untimely.

<br>

                     UNITED STATES DISTRICT JUDGE

*Counsel*:

Yvonne K. Quintana
Espanola, New Mexico

     *Attorney for the Plaintiff*

Cristina A. Adams
Jeffrey L. Lowry
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

     *Attorneys for the Defendants*